Oral argument is not to exceed 15 minutes per side. Mr. Rees for the appellant. Thank you, Your Honor. I'm Jeremiah Rees, the appellant with the Harper. I request to serve 10 minutes per side. That would be fine, and you may proceed. Thank you, Your Honor. It's well understood in this circuit that deposition and affidavit testimony may be used as evidence to defeat summary judgment even when that testimony serves the interests of the party introducing it. And yet in this case, the district court held exactly the opposite when it dismissed the appellant's gender harassment retaliation claims. The district court rejected outright the appellant's deposition testimony, her supplemental affidavit, and the affidavits of two corroborating witnesses, categorizing those submissions as self-serving submissions. While at the same time the district court decided to accept as true the depositions and affidavits submitted by the defendant appellees. This ruling not only resulted in an improper determination of fact and credibility, which is forbidden in summary judgment analysis, it also corrupted every facet of the district court's analyses of the appellant's claims. I'm going to address the three most significant issues arising from the district court's error and the reasons why those issues require the reversal of the district court's summary judgment order and restatement of the appellant's claims. First, the district court's ruling essentially created an unreasonably strict summary judgment standard that would be impossible for most litigants to overcome. Can I interrupt you? I'm sorry. Can you explain to me, the one thing I'm struggling with, and I want to talk about your first point, is what is the evidence that the severe or pervasive environment was because of sex versus because the guy was just a barbarian? Yes, Your Honor. Let's get a question on something that the district court actually did not address in its opinion. Well, just so I understand, the district court finds it's not severe or pervasive. They don't have to address that, right? We agree on that. But the district court would not have to address the— Because of sex, unless they find it severe or pervasive. Well, using the totality of the circumstances analysis, I think that the district court was required to determine whether the harassment that was contained in this case was, in fact, based on sex because— No, no. I understand your argument. What you're saying is because looking at the evidence in the totality of the circumstances, it was either severe or pervasive. So the district court had to do it. But just assume—let's assume that for a second, that it was severe or pervasive. I don't want to get out of—I want to know what's the evidence you point to in the record that shows it was because of her gender versus because he was a barbarian. Well, there's ample evidence in the record, Your Honor, to demonstrate that this was harassment based on sex. First, the harasser initially, when Ms. Harper first became employed at the jail, initially began making sexual advances towards her, was calling her after hours, attempting to get her to accompany him on isolated inmate transports, had complimented her physical appearance frequently, had made statements to the effect of, I wish you were single and I wasn't married so we could— He came on to her. Because the initial conduct by the harasser was sexually motivated, that would be the type of circumstantial evidence that this court has pointed to as evidence that demonstrates that this conduct was in some way related to the harassed individual's gender. What else was there? That's correct, Your Honor. There was more. The sexually—facially neutral harassment began immediately following Ms. Harper's complaint to Terry Elder, the jailer for Webster County, in the presence of the harasser, saying that she felt uncomfortable in the harasser's presence. She was being alone with him and did not want to go on being in situations where she would be put into an isolated scenario. Beyond that, Your Honor, there was affidavits submitted by corroborating witnesses that stated that the harasser, Brad Conaway, did not treat male deputies in the same way that he was treating female deputies, particularly the way that he was treating Ms. Harper with the near-daily instances of yelling, screaming, bullying. I don't recall. I'm sorry to interrupt you. Was it that specific? So Lakota, is that how you pronounce her name? Deputy Lakota, yes. She is the one who you're saying said he was degrading George Flayman. Well, there's two former deputies that provided affidavits. Great. Well, let me ask about Lakota, and then we can get to Green. Lakota stated in his affidavit that— Oh, that's a man. I'm sorry. Yes, sir. He stated that he witnessed Brad Conaway degrading women, his female co-workers, although he could not remember the specifics of what he said. He did witness that he was degrading women. Okay, and what about Green? Green actually provided more specific impairments in her affidavit that Mr. Conaway was controlling over her and her female co-workers had also raised his voice at her on occasion. She told him that he could not treat her that way, that he did not—when I recall with the affidavit, Deputy Green also stated that he treated female co-workers worse than his male co-workers, and that he tried to intimidate the women that he worked with. So that's additional evidence that demonstrates—and also, Your Honors, Ms. Harper's affidavit, which was specifically—all of this was excluded by the court, completely rejected by the court, because the district court claimed it was self-serving. And what's significant about that is that the court did not simply reject a portion of the testimony. The court rejected Ms. Harper's entire deposition, which goes to the distinct instances of harassment. All of her affidavit testimony, all of the affidavit testimony were corroborated witnesses, and did so specifically without making any sort of finding that there was a contradiction between the affidavits and Ms. Harper's deposition testimony because there was none. Her testimony has been consistent throughout this case. Her complaint matches her testimony. Her affidavit matches her testimony. The court also did not make a finding that this was some sort of sham issue that was created by the affidavit that Ms. Harper submitted, and did not make any finding that there was objective evidence in the record to conclusively refuse Ms. Harper's testimony. The court didn't address pervasiveness particularly at all, did it? The court did address pervasiveness, but because it excluded all of – essentially all of Ms. Harper's evidence from its consideration… It determined it wasn't pervasive. It determined it wasn't. That's correct, Your Honor. And it also determined that it actually – the district court actually did state that it found the parking lot incident in which the harasser attempted to hit Ms. Harper with his trunk would arise to the requisite level of severity, but then basically decided to believe the defendant's witnesses who said they didn't witness. And that was actually from the affidavit of Layla McNeely, who is the sister of Terry Elder, who is now an appellee in this matter. And in that affidavit, she actually indicates that some incident did happen in the parking lot between Ms. Harper and Mr. Conaway, just that she didn't witness it and that Ms. Harper, in her opinion, did not seem upset when she talked to her immediately afterwards. Could you address the whistleblower action or claim that you have here and what evidence to support that claim? Yes, Your Honor. With the whistleblower claim, the evidence to support that claim is also the evidence that supports our retaliation claim under the Victims of Civil Rights Act. And what the district court failed to consider in this case, again, was whether in the totality of the circumstances the harassment that Ms. Harper was subjected to by Brad Conaway after making reports to him specifically about administrative violations that were committed by another deputy jailer. Whether or not that would be severe or pervasive enough to constitute retaliatory harassment or would lead to a disruptive discharge. In that case, when Ms. Harper brought her reports to Mr. Conaway, who at that time had become her supervisor, he actually demanded that she drop the issue that she was reporting. Is that the grounds for the whistleblower claim? What consequences followed your targeting back when she went to Conaway himself as opposed to Elder? Right. And the Kentucky Whistleblower Act defines employer to include persons authorized to act on behalf… But the response of Conaway to her complaining about her treatment, was that he yelled at her or said, don't bring it up again? Is that the nature of the claim that you have on appeal with regard to the whistleblowing? And you say it's totality, and so you may answer, even though the lights are on, you may answer that question. But I was trying to see if they were distinct, and you're saying they all kind of merged together? Yes, that is what we're saying. But the claim, if I have it correctly understood, the claim is she was treated worse after going to Conaway and complaining about his treatment. I wouldn't argue, Your Honor, that she was treated worse. But she does have a consequence that we would say, oh, that is a result of the whistleblowing. Your Honor, I wouldn't say that she was treated worse specifically because of that specific instance. I would just say that she was subjected to the same type of retaliatory harassment that she had been subjected to through the entire career out of her employment there. I think you've answered it. We'll explain and address it again if necessary. Thank you. Thank you. You're very welcome. Thank you. You're welcome. Please be cordoned, Mr. Reese. My name is Chris Hopkins. I represent all the attorneys, which is the J.R. Terrio, Brad Conaway, and the Register of County Officials. Mr. Reese is a capable attorney and certainly is able to make the most of the facts that he has. However, the inescapable fact is that when Harper suffered no adverse employment action and no change to the terms of her employment while she was at Webster County, her testimony, she does not deny that she simply quit coming to work. She does not deny that it was weeks after she quit coming to work that she told Taylor Elder that she couldn't work with Sergeant Conaway. And she does not deny that Taylor Elder offered her a different shift at the same rate of pay with no greater dues. She admits that when she stopped coming in that Taylor Elder told her, you're a good employee and we don't want to lose you. That does not sound like a great place to start an employment discrimination case. Well, let's – I think one of the problems is let's separate out the claims. So I know your friend wants to talk about them all together, but that's to his detriment, I think. If you're talking about the harassment claim, right? If you're in a hostile work environment, it's irrelevant whether the company, the jail, whoever does something to you. If you complain and they do nothing, that's enough. It doesn't matter what happens after that. You agree? I understand that point. However, there's the case of McLean does mention it's McLean versus – it's a North Point training center. I had versus employment actions mentioned in that room in 440 F3-320. However, I'm going to assume that for your point to be the case, then we're back to the severe or basic argument. And I submit to you that Judge McKinley on page 8 said Mrs. Harper's allegations did not rise to the level. Let me ask you just about that because I'm curious. I had some – I struggled a little bit with the language of his opinion because he says, however, there is an additional problem. So this is page 8 in the middle. So first he talks about there's not enough evidence. Then he says, Ms. Harper submits only her deposition and testimony and affidavit as contention that she endured abuse several times a week for the entire duration of her employment. And then he says, it is well-established in this district, as it is across the nation, that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment. So that's a long-winded way of saying – so if a plaintiff says, look, he called me up on the phone multiple times to take my ID, and he was abusive, he was harassing, he asked me out, and then I went to work. And he treated me worse than – he yelled at me, he screamed at me, he did all these things. So you've got those two combinations. You've got nothing else. You've got no support from any employees. You've got nothing else. Why isn't that enough? I mean – Yes, Your Honor. I understood. In her deposition, she said when I asked her, give me some specifics. She couldn't. In her affidavit, she gives me generalities. So I believe that under your hypothetical, it doesn't meet the – But I thought she did give – I'm sorry to interrupt you. I apologize. I thought she did give – she said he asked me out. She said he drove the car at me. She had some other things she mentioned that people told her to watch out, that he would make personal conversations with her, things like that. Your Honor, I believe it's on page 37 in the record in 309 where she talks about you look nice today. She says there was an off-caller joke that she overheard. It wasn't directed at her, but it was made, she says, by Mr. Conway at the jail. Those were her things. You look nice today. Let me give you a scenario. So she did testify to you after Rob, right? Am I wrong about that? Your Honor, I can't commit to that. Okay. That's fine. Let me give you a hypothetical. So she asked him out – or he asked her out. She says no, and he drives the truck at her. Is that enough? Your Honor, I don't believe so. I don't believe so. Okay, so let me give you a scenario as to why I think it could be, and then you tell me why or not. I think it could be because I view the evidence in the light most favorable to her. We do, I'm sorry. It seems to me it's severe or pervasive. It seems to me driving a truck at someone is pretty severe. It may not be pervasive, but it's severe. And there's an or there. And so it's severe or pervasive. And then she could say he did it because of this. And then she has some other circumstantial evidence. He's a showman, as someone said. That sounds like light opinion testimony that might be admissible in court. He – when she got there, he got warned. So when I view the totality of the circumstances, view all that evidence, why is that not? Well, that's a great question. And I think when you look at the totality, you also have to conclude – you also have to take into account, and I think it's the case cited by Mr. Reese, the Hamilton v. G.E. case. Also, things that are uncontradicted. What's totally in the record that's uncontradicted and balance that out. And I think that's the balance. Back to your question. I think the question – I'm sorry. I agree with you on undisputed evidence. Give me the undisputed evidence that somehow makes me disregard that evidence, which you can't do unless the evidence so utterly contradicts, to quote the Supreme Court, that I have to disregard it. She complained to no one. There's no record of any complaint about the truck incident. That would seem to be – and I agree with you. If somebody drove a truck at me, in this day and age, people call the police. They can call the police. She didn't complain to anyone. At least we don't have any record of any complaints she said she made. But that seems to be something a jury can – I mean that seems great for you at a jury trial. But it doesn't seem – why does that give a district judge the liberty to disregard? I believe, Your Honor, that it just – and I understand your point. You think it's severe. Judge McKinley didn't think it was severe. She certainly discounted that over the course of a long period of time – this was early on. And I do want to address the one thing. The question was not that he asked me out that I think the comment was. Are you saying, oh, too bad, I'm married, something along those lines. It was less than, will you go out with me? No. Let me. Over the course of time – this is early on. This is in – the allegation was there was an argument at the jail about a lockdown. And she says after they went outside, he drove his truck quickly, fast in her direction, but with intention, much like the traffic on the road that we get. But I understand your point, Your Honor. I just disagree. I think it doesn't rise to the level of severe. When considered in the totality, over two years of employment, and then everything else after that has something to do – some complaint by her that she's not doing her job right. The testimony of the sheriff himself, the elder, seems to acknowledge the problem with Conway and her. The jailer seemed to more or less concede that he was the problem. Your Honor, not so much that he's a problem, but that he's that way to everyone. I think Mr. Saul has testified clearly to his deposition. Brad's the same way to everyone. Did he also testify that she had complained to him repeatedly, seeking some relief from the supervision by Conway? What I recall from J.R. Elder's testimony was that certainly he works as the supervisor where he's got people complaining, but his policy was put it in writing, and she would never put anything in writing so he could address it. She said she did. We have one complaint in writing, and actually it was Deputy G.W. Saul's that wrote that out. It's about Colin Woolford, someone totally unrelated to Mr. Conway, an African-American that she said called her a bad word, and she felt like if he called her that, she couldn't call him a bad word, so something ought to happen. That's the only complaint we have in writing. He didn't testify. His policy was put it in writing, but I thought his testimony more or less acknowledged the problem. Your Honor, I don't dispute that this is a jail, and Mr. Conway's a 6'5", big guy, and he is a loud person, so he is what he is, and I don't think there's nothing— He got promoted. He did. He did. I mean, he certainly was—maintaining order is a big role, and he had the ability to maintain order. I understand it may be hard to work in a place where you have to be strict, but that's the nature of a jail, which a Class D facility, we have convicted felons. For a small county, it's a fairly large jail. What part of the state is the county? What part of the state? What city is nearby? Western Kentucky, Your Honor. It's near Evansville, Indiana. It would probably be the best I could do for you. I'm sure Henderson and Madisonville wouldn't be much to do. Dixon is between Henderson and Madisonville. Thanks. The remaining claims, if the court will let me address them, I think failed because of the lack of adverse employment action. Certainly, the allegations by counsel that the Kentucky Civil Rights Act somehow saves them doesn't because the Kentucky Civil Rights Act examines this just the same as Title VII. Judge McKinley was correct on that. So there's not—there's no addition to the Kentucky—nothing adding to the Kentucky Civil Rights Act doesn't help their cause. And I think Judge Coe focused on the whistleblower in that one. There's a complete disconnect in that. The Whistleblower Act is designed to protect someone if they report something up the chain, and something happens to them. Nothing happened to that. The allegation was that there was a Jimmy Hernandez that was too friendly with female inmates. Conway—she complained to Conway. He said, leave it alone. She went to tell your elder. They had a conference. The elder looked at Conway and said, fix that. The Whistleblower Act claim targeted both Conway and Elder in the county. Yes, Your Honor. So who—so one is—Conway is not an employer. Correct. Obviously. Did it target his conduct? I mean, counsel— Yeah. Your friend on the other side is saying that it targeted that action with Conway as opposed to with the sheriff. Her complaint was that Hernandez—she thought Hernandez was violating the Prison Right Elimination Act. I don't think his conduct rose to that occasion, but certainly she had the right to complain about it. She had the right to go to jail or her elder. He had the right to come and fix the problem. Nothing happened to her because of that. I'm saying sheriff, and I know he's a jailer. He's a constitutional officer. He's in charge of the jail. The county actually funds the jail. But the jailer is the one that has the right to hire—subject to having funding for hiring someone. Thank you. As I pointed out, Kentucky now analyzes the law-supporting environment for gender-based discrimination. It's the same. As I indicated earlier, Ms. Harper's comments that she complains about, you look nice today, the off-color joke. She complains that Mr. Conway called her at home. In jails, it requires a female—transport a female inmate. A female deputy has to go with a female inmate. Those have to be arranged. That was the reason that she used her phone. That's the reason he would call her. And then, of course, she claims that the focus of the hostility, other than the automobile incident and the rest of it, is involving how the job was done, whether the inmates were walking in the line correctly, whether they were—whether the medicine was to be handed out by her or someone else. As I pointed out, it's the—I believe it's Justice Scalia's opinion, on Cal, that says we have to take into the scope, the context, of the type of employment where we are. Or I think maybe we can have a correct analysis that there's no fact in the record to connect Ms. Harper's claims to gender-based animosity. Now, there are affidavits and there are conclusions, but even Ms. Green, all her affidavit is simply conclusory affidavits that he was—he seemed to treat women worse. He was loud and didn't treat the male deputies that way. Yet Ms. Harper, in her deposition, said that Brad was mean to Lakota, a man, and me. So she even acknowledges that, as the court said, we have a problem. We have people that we don't like to work with, and that's okay. The employment laws don't protect us from rude people, from people that we don't like to work with. But even Ms. Harper acknowledges that he was difficult with males and females. In the affidavit, I think the case is Young versus State Farm, Western District of Tennessee that discusses the affidavits that are conclusory don't help establish a genuine issue of material fact, and I believe that's where her case falls down largely. The whistleblower claims we discussed, the Bible whistleblower claim depends upon action or threat of action or simply does or was not. There was no retaliation in an anti-retaliation statute in Kentucky, and I believe that her claims fail for constructive discharge. I believe it's the totality of the circumstances that Mr. Reese acknowledged that the court looked at, and you can't simply ignore all of the evidence, understanding that we take it in a light most favorable to her, but in a totality of circumstances, which is what the judge indicated in the big picture, as I said, employment laws do not protect us from being nice to each other That's the totality of the circumstances. Thank you. Mr. Reese, you have some rebuttal time. Thank you, Your Honor. I'd like to start with a question I have regarding the whistleblower claim. As I read it, Ms. Harper's claim is focused on a singular thing, her complaining about Hernandez spending too much time with female inmates in violation of a statute. She complains about that, and that is where Conaway, for her to mind her own business, he addressed the problem by saying, you know, fix it, you knock it off, and she should mind her own business. And the question is, what materially adverse consequences came as a result of that? And what I worry is that your claim is, well, you know, she got bad treatment the whole time, and so it urges the, I don't see it, to sit. Yes, Your Honor. Well, the whistleblower claim is not based on a single report of Deputy Hernandez violating prison regulations. You haven't just drafted your claim, framed it in that way? No, Your Honor. There were several reports that Ms. Harper made to Mr. Conaway before escalating them to Terry Elder regarding Mr. Hernandez's violations of Kentucky Administrative Regulations and the other. Okay, so say there are several. It's still focused on that kind of thing? It's still focused on the harassment on the… And the females. Right, that's her disclosure. And then the adverse action, which is the same for the Whistleblower Act, is under the same standard as… Now, what, I think, just help me think about this. Under the Whistleblower Act, you have to be punished for essentially being a whistleblower, right? Under Kentucky law. For making reports, making disclosures. Okay, let's assume the disclosures in your favor are qualified, okay? And I think the ones about Hernandez would. Isn't it when… Isn't it undisputed, as I read the evidence, when she went to Elder, Elder told Conaway to fix the situation and did not retaliate against her? Did Elder retaliate against her directly? Yes, that's the employer, right? Well, the retaliatory… Hold on a second. You go to the boss, not to an intermediary, and you say, Look, this is happening. The boss says we have to fix this. Well, and that wasn't the only part of… That wasn't the only issue in Ms. Farquhar's complaint to Mr. Elder. She also disclosed to Mr. Elder that Mr. Conaway was attempting to silence her from complaining about Mr. Hernandez's actions. And that Mr. Elder took no action, did not address it whatsoever. No, wait. If he addresses the problem and doesn't do anything to her, then whether he – if he can make those determinations, that's just – otherwise, every time you complain, you're saying they have to do something, even if it's irrelevant, right? Well, I would argue, Your Honor, that the disclosure that Ms. Harper made to Mr. Elder also included the unlawful personnel action of retaliating against Ms. Harper for bringing those disclosures to Conaway. What's the retaliation? This is what I think perhaps Judge Farquhar and I are both focused on. Retaliation in what way? By telling her to mind her own business instead of doing something about Conaway or Conaway telling her to mind her own business. She wanted Elder to punish Conaway for saying that because how did it affect her job any differently than all the other things about which she complains? Well, as a deputy, she has a duty to – Yeah, I know. So let's say we got it, and she does her duty. She reported it, the misconduct, and she didn't get rewarded for that. Is that the problem? No, Your Honor. It's not just that she had a duty to report. She had a duty to protect her inmates from any actions that threatened their own safety. We understand her duties. What is the retaliation against her? Just answer that question. The retaliation against her would be the verbal abuse that Brad Conaway subjected her to when she made the reports of Deputy Hernandez. That's it. He's abused her for years. I mean, that's where I'm having problems. That's no different than all the other abuses. Well, it's – If we credit your case. That's true, Your Honor. But the issue when we're talking about a prima facie case – And I thought that stuff – I'm sorry. I thought he was doing that because of her gender. This is why you're tripping me up with your brief on the causation. I think you can muddy the waters on both enough to lose on all. In other words, is he doing it – If you put in contradictory evidence, we clearly can disregard it under the Supreme Court precedent. It's one thing to use their evidence, Patrick. If your client's saying he's doing it because of my gender, no, he's doing it because I'm complaining. On that, we don't know which one it is, and we can throw them both out. But, Your Honor, respectfully, a retaliation for making complaints of gender discrimination has been held by the Supreme Court to be sex discrimination in and of itself. I understand that, but you're saying – Hold on. Hold on. You're saying he was – the whistleblower complaint is because she believed that Hernandez was acting inappropriately. She did a good thing. I'm not saying anything about it. She followed her duty. And that's why they retaliated. If what you're saying is they retaliated against her because she was making sexual harassment claims, that's a different claim. That's why we brought different claims. And respectfully, we believe and we would argue that the evidence is demonstrative of multiple motives by Brad Conaway. Just because his – the actual method of his retaliation or discrimination remained the same consistently throughout this period does not mean that he could not have multiple impermissible and unlawful motives for why he was treating Ms. Harper with this type of verbal abuse. And I see that I'm out of time, Your Honor. Okay. Thank you, Mr. Reese. And thank you both really for your arguments this morning. We appreciate them. The case will be submitted, and you may call for the next case.